IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERRI L. RAINE, | ) | CASE NO. 5:11 CV 2243 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Terri L. Raine, for disability insurance benefits and supplemental security income. The parties have consented to the jurisdiction of the Magistrate Judge.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Raine had severe impairments consisting of degenerative disc disease of the lumbosacral spine; left shoulder impingement syndrome and left bicep tendonitis, status post injury to the left shoulder in September 2008; hypertension with left ventricular hypertrophy ("LVH"); history of episodes of chronic bronchitis, asthma, and allergic rhinitis with a long history of tobacco abuse; history of hepatitis C infection; obesity; and polysubstance abuse.[1]

---

[1] Transcript ("Tr.") at 11.

The ALJ determined that Raine had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant: can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; can frequently stoop and crouch; can occasionally kneel and crawl; can occasionally reach overhead with her left upper extremity; and must avoid concentrated exposure to respiratory irritants such as fumes, odors, dusts, gases, poor ventilation, etc.[2]

Given that RFC finding, which was incorporated into a hypothetical posed to a vocational expert ("VE") at the hearing,[3] the ALJ decided that Raine could perform past relevant work as a cleaner/housekeeper.[4]

Raine seeks reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Raine argues that the RFC finding does not contain limitations for her LVH or for the need for frequent use of the restroom caused by her diuretic prescription.

Following briefing in this case, I conducted a telephonic hearing on the record.[5] Based on that hearing,[6] the briefs herein, and the administrative record, I recommend that the decision denying the applications for disability insurance benefits and supplemental security

---

[2] *Id.* at 12.

[3] *Id.* at 65-66.

[4] *Id.* at 60.

[5] ECF # 23.

[6] ECF # 26 (transcript of the oral argument of Oct. 3, 2012).

income be reversed and the case remanded for reconsideration of the RFC finding as discussed below.

## Analysis

**1.      Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[7]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner

---

[7] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[8] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[9]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.      Substantial evidence and the RFC finding**

As reflected in the oral argument held in this case, Raine's challenge centers on the RFC finding, which the ALJ incorporated into the hypothetical posed to the VE.[10] Based upon the VE's answer to that hypothetical, the ALJ found Raine capable of her past relevant work as a cleaner/housekeeper.[11] Derivatively, therefore, Raine challenges the finding of capability to do past relevant work.

Raine submits that the RFC finding should have included additional limitations caused by her LVH and by frequent urination brought on by prescription diuretics.

---

[8] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[9] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[10] Tr. at 64-65.

[11] *Id.* at 65.

*a.*     *LVH*

At step two the ALJ found as a severe impairment LVH.[12] LVH is enlargement of the muscle tissue that makes up the wall of the left ventricle, the heart's main pumping chamber.[13] LVH requires the left ventricle to work harder, which causes the walls of the chamber to grow thicker, lose elasticity, and pump with less force than a healthy heart.[14] High blood pressure is a common cause of LVH.[15] LVH manifests itself in shortness of breath.[16]

The ALJ's decision extensively discusses high blood pressure readings[17] and Raine's complaints of shortness of breath.[18] The ALJ further reviewed in detail the multiple cardiac tests administered to Raine, including stress tests and cardiac catheterization.[19] He also

---

[12] *Id.* at 11.

[13] Mayo Clinic, http://www.mayoclinic.com/health/left-ventricular-hypertrophy/DS00680 (last visited 3/25/2013).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] Tr. at 13-14.

[18] *Id.*

[19] *Id.* at 13-15.

discussed pulmonary testing performed on Raine.[20] Additionally, I summarized the medical evidence in the record during the oral argument in this case.[21]

The ALJ compensated for Raine's LVH by imposing an exertional limitation to light work.[22] As developed at the oral argument in this case, Raine submits that the ALJ should have adopted the more stringent limitation to sedentary work.[23]

My decision on the ALJ's RFC finding turns on the ALJ's evaluation of the opinions of acceptable medical sources and other medical sources. Murrell Henderson, D.O., performed a consulting examination in July of 2009 and prepared a written report and opinion.[24] Rebecca Neiger, M.D., a state agency reviewing physician, did a records review and completed a physical RFC assessment in September of 2009.[25] I discussed and reviewed these opinions with counsel at the oral argument.[26]

Dr. Henderson diagnosed Raine as having lower back and knee pain, COPD, and "angina by history."[27] The examination notes reflected elevated blood pressure and decreased

---

[20] *Id.* at 14.

[21] ECF # 26 at 3-5.

[22] Tr. at 12.

[23] ECF # 26 at 19.

[24] Tr. at 341-42.

[25] *Id.* at 308-15.

[26] ECF # 26 at 5-6.

[27] Tr. at 342.

breath sounds.[28] Otherwise, the examination findings were unremarkable, satisfactory, and within normal ranges.[29]

Dr. Henderson offered no specific exertional limitations.[30] She observed, however, that "decreased breath sounds and shortness of breath *may* preclude activities other than those of a sedentary nature. Change of positions in a relatively sedentary job would likely be necessary.[31]

Dr. Neiger commented on Dr. Henderson's opinion. She gave the recommendation of sedentary work with frequent changes of position no weight.[32] She gave as reasons reliance on allegations not supported by clinical evidence or findings during the consulting examination.[33] She concluded that Raine could perform medium work.[34]

In November of 2009, a physical therapist at Mercy Medical Center completed a functional capacity evaluation assessment.[35] The therapist reported that Raine, "scored in the

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* (emphasis added).

[32] *Id.* at 314.

[33] *Id.*

[34] *Id.* at 309.

[35] *Id.* at 357-62.

light to medium range for exertional tests."[36] The evaluation acknowledged cardiovascular and cardiopulmonary issues.[37] It concluded, "[p]ain was not a limiting factor. \*\*\*\*\* Safe/physical endpoints were met. Pain was a mild factor. Pt [patient] completed FCE in no apparent distress and left the clinic w/o [without] complaint."[38]

The ALJ gave Dr. Henderson's limitation to sedentary work little weight as inconsistent with examination findings and daily activities.[39] Dr. Neiger's opinion received some weight, but the ALJ found the medical evidence was more consistent with light, as opposed to medium, work.[40] As to the physical therapist's evaluation of Raine's exertional limitations – light to medium – the ALJ accorded considerable weight.[41]

The limitations incorporated into the RFC finding to address Raine's severe impairment of LVH have the support of substantial evidence in the record. The ALJ acknowledged the presence of the high blood pressure that commonly causes LVH[42] and Raine's complaints of shortness of breath.[43] He reviewed the results of cardiac testing; which

---

[36] *Id.* at 357.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 16.

[40] *Id.*

[41] *Id.*

[42] *Id.* at 13-14.

[43] *Id.* at 13.

included a heart catheterization, myocardial profusion imaging, a stress test, a chest x-ray, an electrocardiogram, and an angiography.[44] In the main, these test results were unremarkable.[45]

Furthermore, the ALJ reviewed and articulated with respect to the opinions of multiple medical sources, none of which was a treating source. Although the ALJ need not give good reasons for the weight assigned to opinions of sources who have not treated the claimant,[46] the ALJ here did explain the reasons for the weight assigned to the opinions of Drs. Henderson and Neiger and the physical therapist at Mercy Medical Center.[47] The ALJ's conclusions that Dr. Neiger had overstated Raine's capabilities and that Dr. Henderson had overstated them, in light of the exertional testing done at Mercy Medical Center, are reasonable given the objective medical evidence. These conclusions fall within the zone of choice within which the reviewing court may not interfere.[48]

---

[44] *Id.* at 14-15.

[45] *Id.*

[46] *Perry v. Comm'r of Soc. Sec.*, No. 12-5179, 2012 WL 44605, at *2 (6th Cir. Sept. 27, 2012).

[47] Tr. at 16.

[48] *Buxton*, 246 F.3d at 772.

### b.     *Frequent urination caused by prescription diuretics*

Raine testified,[49] and the ALJ's decision notes,[50] that medication causes her to urinate frequently and have the need to use the bathroom after taking diuretic medication. The ALJ incorporated no limitations in the RFC for frequent use of the bathroom, however.

At the hearing, Raine's attorney posed a hypothetical to the VE in which she would need to take three or four breaks per hour in the "first couple hours" of the workday to urinate because of the medication.[51] In response, the VE responded that such a limitation "would have to likely be accommodated by the employer."[52]

Accordingly, if the RFC should have included a limitation for this frequent need for urination and unscheduled work breaks, Raine would have been disabled at step five, based on the VE's testimony. The ALJ does not discuss why he excluded such limitation from the RFC.

At the oral argument, counsel for the Commissioner argues that Raine failed to meet her burden of proof for frequent urination and the need for unscheduled breaks during the workday because the record does not establish when she had to take medication.[53] In other

---

[49] Tr. at 43, 53 and 154, 159, 194 (disability reports).

[50] *Id.* at 12-13.

[51] *Id.* at 73-74.

[52] *Id.* at 74. The Social Security disability decision does not take into account whether a significant number of jobs exist with reasonable accommodation. *Cleveland v. Policy Mgmt. Syss. Corp.*, 526 U.S. 795, 803 (1999).

[53] ECF # 26 at 11-12.

words, she could have taken the medication at night or several hours before the beginning of the workday to avoid the need for breaks.[54]

This arguments fails for two reasons. First, the record does establish that Raine was to take her diuretic for high blood pressure "first thing in the morning" and the evening dose "12 hours after the first dose in the morning."[55] Second, this Court cannot accept counsel's argument in support of the absence of a limitation as a substitute for the ALJ's explanation for omitting such a limitation, particularly in light of the VE's testimony.[56]

This case must be remanded, therefore, for reconsideration of the RFC finding regarding a limitation for unscheduled bathroom breaks necessitated by the side effects of diuretic medication.

## Conclusion

Based on the foregoing analysis, the ALJ's RFC is affirmed to the extent of the exertional limitations set forth therein. The denial of Raine's applications, nevertheless, is reversed and the case remanded for reconsideration of the RFC as to limitations caused by the alleged frequent irritation experienced by Raine as a side effect of diuretic, prescription medication.

---

[54] *Id.* at 12-13.

[55] Tr. at 255.

[56] *Anderson v. Comm'r of Soc. Sec.*, No. 1:11 CV 2105, 2013 WL 322119, at *3 (N.D. Ohio Jan. 28, 2013).

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[57] the Court concludes that the position of the Commissioner was substantially justified.

Dated: March 26, 2013                    s/ William H. Baughman, Jr.
                                         United States Magistrate Judge

---

[57] 28 U.S.C. § 2412(d)(1)(A).